In the
# United States Court of Appeals
## For the Seventh Circuit

No. 21-1957

CHERYL WEAVER,

    *Plaintiff-Appellant*,

v.

SPEEDWAY, LLC,

    *Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:19-cv-00041-JEM — **John E. Martin**, *Magistrate Judge*.

ARGUED JANUARY 25, 2022 — DECIDED MARCH 15, 2022

Before RIPPLE, WOOD, and JACKSON-AKIWUMI, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Cheryl Weaver initially brought this premises-liability action in state court seeking damages for injuries she sustained when she tripped over the curb in front of a Speedway gas-station convenience store. Alleging negligence on the part of Speedway, LLC ("Speedway"), she initially sued Speedway in Indiana state court. Speedway removed the case to the United States District Court for the

2                                                          No. 21-1957

Northern District of Indiana based on diversity of citizenship.[1]

In due course, Speedway moved for summary judgment on the issue of liability. Ms. Weaver replied that the curb presented an unreasonable tripping hazard because it was not painted yellow, as required by a Speedway internal policy. The court entered summary judgment for Speedway; it concluded that, as a matter of law, Speedway's failure to paint the curb was not negligent because the alleged hazard was open and obvious. For the reasons set forth in this opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

When Ms. Weaver walked up to the convenience store at a Speedway gas station in December 2017, she did not notice the curb in front of the doorway. She tripped on the curb, fell to the ground, and sustained injuries. Ms. Weaver sued Speedway in Indiana state court for negligence, alleging that the company failed to maintain its premises in a reasonably safe condition.

Speedway removed the case to federal court. The removal notice explained the complete diversity of citizenship between the parties and stated that the amount in controversy exceeded $75,000.[2] The district court bifurcated the case, or-

---

[1] *See* 28 U.S.C. §§ 1332(a), 1441(b).

[2] In support of removal, Speedway only provided a conclusory statement that the jurisdictional amount was satisfied, although the complaint was vague as to the plaintiff's injuries and included no specific

(continued … )

No. 21-1957 3

dering the parties to focus on liability in the first phase and postpone discovery relating to Ms. Weaver's injuries and damages until the second phase.

After discovery on liability closed, the parties filed cross-motions for summary judgment on that issue. Ms. Weaver presented evidence that she had not noticed the curb when she tripped.[3] Her evidence also included two pictures of the curb, as it appeared three days after her fall.[4] According to Ms. Weaver, these pictures show that the color of the sidewalk and of the street below the curb is the same.

---

( … continued)

prayer for relief, *see* R.7 ¶ 11. Had the plaintiff objected to removal, presumably the district court would have held Speedway to its burden to demonstrate the amount in controversy by the preponderance of the evidence. *See* 28 U.S.C. § 1446(c)(2)(b). To determine our own jurisdiction, we were left with little in the way of support for diversity jurisdiction at the time of removal. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021) (noting our independent obligation to confirm subject matter jurisdiction). We should not have had to scour the district court record to find support for the $75,000 threshold, but we have. And filings from early in the case convince us that the amount was satisfied at the time of removal. For example, Ms. Weaver explained in a status report that she injured her elbow in the fall and had multiple surgeries; in another status report, Speedway mentioned that Ms. Weaver stated in an interrogatory response that she had broken her wrist, hand, and elbow. *See* R.16 at 1; R.17 at 1. It would be fair to assume that such extensive medical care would cost more than $75,000, especially accounting for her alleged pain and suffering. Thus, we conclude that the parties have made a good faith allegation of the amount in controversy. *See McMillian v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009).

[3] R.47-4 at 2; R.47-5 ¶ 1.

[4] R.47-1; R.47-2; R.47-6 ¶ 1.

The paint on the curb itself is faded to the point that it is barely visible. The pictures depict the curb to be a standard height, and Speedway confirmed this fact at oral argument. The pictures do not reveal any structural defects to the curb or to the surrounding area. The store behind the curb has glass doors, and there are several signs on the outer walls of the store on both sides of the doorway.[5]

Ms. Weaver also submitted evidence that Speedway's corporate manual required the curb to be painted: "The curb in front of any doorway should be painted yellow to indicate a change in elevation."[6] The stated purpose of the policy is to "keep customers and Store associates safe on [the] premises."[7] In response to questions about Speedway's policy, a former Speedway general manager also testified that an unpainted curb presented a threat to customer safety that would warrant an emergency work order.[8]

A magistrate judge, sitting as the district court with the parties' consent under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, granted summary judgment for Speedway. The court concluded that any danger posed by the curb was obvious and that Speedway had no reason to anticipate

---

[5] To the extent that Speedway's contemporaneous photographs depict things differently, we credit, for present purposes, Ms. Weaver's attestation that her exhibits represent the appearance of the curb in the days around her fall.

[6] R.47-3 at 2 (Miller Dep. 10).

[7] R.54-1 at 5.

[8] *See* R.47-3 at 3–4 (Miller Dep. 10–14).

that Ms. Weaver would not protect herself from such a situation. The court relied in part on evidence that, in the last five years, only one other person had reported falling over that curb, and Ms. Weaver herself had visited the same store multiple times without tripping. Although the policy to paint the curbs outside store entrances was relevant, the court continued, a violation of that policy would not by itself establish a breach of Speedway's duty as premises owner.

## II

## DISCUSSION

Ms. Weaver now submits the district court erred in granting summary judgment for Speedway. While admitting that Speedway's policy requiring curbs to be painted yellow does not define the standard of care, she maintains that the existence of the policy raises a factual question about whether Speedway breached its duty by not clearly demarcating the curb.

"We review the district court's grant of summary judgment de novo." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643 (7th Cir. 2020). Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'when the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (quoting *Est. of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017)). When considering a motion for summary judgment, we, like the district court, view the record in the light most favorable to the nonmoving party. *Poer*

*v. Astrue*, 606 F.3d 433, 438–39 (7th Cir. 2010). However, "inferences 'that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Carmody*, 893 F.3d at 401 (quoting *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093, 1099 (7th Cir. 2017)).

Moreover, Federal Rule of Civil Procedure 56(c) imposes a very specific duty on a party resisting a motion for summary judgment:

> [S]ummary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial. Such a dispute exists when there is sufficient evidence favoring the non-moving party to permit a trier of fact to make a finding in the non-moving party's favor as to any issue for which it bears the burden of proof.

*Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

Because federal subject matter jurisdiction is based upon diversity of citizenship, we apply the substantive law of Indiana. *See Maurer v. Speedway, LLC*, 774 F.3d 1132, 1136 (7th Cir. 2014). We therefore first identify the basic principles of premises liability in Indiana and then apply them to the case at hand.

### A.

In order to establish her negligence claim under Indiana law, Ms. Weaver must establish that (1) Speedway owed her a duty of care; (2) it breached that duty; and (3) the breach

No. 21-1957                                                                 7

proximately caused injury to Ms. Weaver. *See Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). The parties agree that Speedway, a landowner, had a duty to Ms. Weaver, a business invitee, to protect her in a reasonable manner against danger on its premises. Because discovery was bifurcated between liability and damages, and the summary judgment motions were limited to the issue of breach, whether Ms. Weaver can show causation and injury has not yet been litigated.[9] Therefore, only breach of duty is at issue here.

Under Indiana premises-liability law, a landowner breaches its duty to an invitee when the landowner

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it,

---

[9] Speedway argues on appeal that the judgment can be sustained because Ms. Weaver cannot establish the element of proximate causation. But that is a new argument on appeal, and it is therefore waived. *See Soo Line R.R. Co. v. Consol. Rail Corp.*, 965 F.3d 596, 601 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1068 (2021). Further, because causation and injury are related inquiries, *see Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994) (noting that causation requires a showing of a "reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered"), it would be inappropriate to vault ahead to resolving that issue before any discovery, including expert discovery as needed, on Ms. Weaver's injuries.

> and (c) fails to exercise reasonable care in protecting them against the danger.

*Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990) (emphasis removed) (quoting Restatement (Second) of Torts § 343 (1965)). Notably, Indiana courts, in applying this test, articulate the corollary principle that a landowner is generally not liable for "'known or obvious' dangers on the land" so long as it would not "anticipate the harm despite such knowledge or obviousness." *Roumbos v. Samuel G. Vazanellis & Thiros & Stracci, PC*, 95 N.E.3d 63, 66 (Ind. 2018) (quoting Restatement (Second) of Torts § 343A(1) (1965)).

The analytical approach articulated by the Indiana courts confirms their adherence to Restatement § 343. *See Walters v. JS Aviation, Inc.*, 81 N.E.3d 1160, 1163 (Ind. Ct. App. 2017). That section provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting Restatement § 343). Indiana courts also have recognized that "Section 343 should be read together with

No. 21-1957 9

Section 343A," *Converse v. Elkhart Gen. Hosp., Inc.*, 120 N.E.3d 621, 627 (Ind. Ct. App. 2019) (citing Restatement (Second) of Torts § 343 cmt. a (1965)), which provides in relevant part: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement Second (Torts) § 343A(1) (1965); *see also Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 20 (Ind. Ct. App. 2015) (quoting same).

Comment f to § 343A(1) explains the situations that subsection (1) is meant to address:

> There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.
>
> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that *the invitee's attention may be distracted*, so that he will not discover what is obvious, or will forget what he has discovered, or fail to

10            No. 21-1957

> protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he acted reasonably under the circumstances.

Restatement (Second) of Torts § 343A(1) cmt. f (1965) (emphasis added) (citation omitted).

    Given the procedural standard imposed by Rule 56 and the substantive standards imposed by Indiana law, Ms. Weaver must have evidence that Speedway knew of the condition of its curb or, as a landowner exercising reasonable care, should have discovered its condition. She also must establish that Speedway, as a reasonable landowner, should have realized that the curb presented an unreasonable risk of harm to invitees.

    The parties do not dispute that Speedway had knowledge of the curb's condition. Therefore, our focus must be on whether Ms. Weaver has produced sufficient evidence from which a jury could find that the curb created an unreasonable risk of harm to Ms. Weaver that she could not have expected to recognize on her own. Speedway submits that, because the standard-height curb presented an obvious elevation change, the condition did not create an unreasona-

No. 21-1957 11

ble risk of harm. Ms. Weaver counters that the change in elevation between the street and the sidewalk was not obvious because it was not demarcated in a noticeable way, and therefore it created an unreasonable risk.[10]

In evaluating these arguments, the decision of the Indiana Court of Appeals in *Walters*, provides a good starting point. There, the court said that "[s]teps and stairs are an everyday occurrence, and invitees are generally expected to see them and know how to use them." *Walters*, 81 N.E.3d at 1163. Nevertheless, the court also realized that "under the specific facts of a particular case, a step's character, location, or surrounding conditions may create an unreasonable risk of harm to an invitee." *Id*. Therefore, we must decide whether a reasonable jury could determine that, at the time of the accident, the step in front of the Speedway store created an "unreasonable risk of harm" based on its "character, location, or surrounding conditions." *See id.*

In a non-precedential case, an Indiana appellate court has recognized that a jury might find an unusually large height differential in a step to be neither obvious nor a reasonable risk of harm. *See Black v. Basham,* No. 79A05-0711-CV-656, 2008 WL 2854520, at *4 (Ind. Ct. App. July 25, 2008) (unpublished) (fifteen-inch drop from apartment-complex sidewalk to alley). Indiana courts also recognize that, because a hazard should not be assessed in isolation from its surroundings, *see Roumbos*, 95 N.E.3d at 68, an ordinary step

---

[10] *See* Appellant's Br. 14; R.51 at 10 ("[F]ailure to clearly delineate the height difference between the parking lot and the curb was a tripping hazard….").

can pose an unreasonable risk of harm if it is located in a potentially distracting location, *see Walters*, 81 N.E.3d at 1163–64. In *Walters*, an Indiana court held that a step leading from a pilot's lounge into an airplane hangar required a warning. *Id.* Even though the defendant in that case had placed multiple warning signs about the step, and the plaintiff acknowledged that "if she had looked down … she would have seen the step," the question of breach of duty could not be decided as a matter of law. *Id.* at 1162, 1164. The court reasoned that the unlikely location of the step, the lighting, and the fact that nonslip mats on either side of the step "led [the plaintiff] to perceive the floor as 'one flat level' surface," were enough to create triable issues of fact. *Id.* at 1164; *see also Roumbos*, 95 N.E.3d at 68 ("Whether the wires generally, or the phone cord specifically, were obvious because they would have been apparent to a reasonable person under the circumstances is a disputed issue of material fact on this record that precludes summary judgment.").

In an effort to demonstrate that the curb in front of the Speedway store presented a risk that was neither obvious nor reasonable, Ms. Weaver has chosen as the centerpiece of her case Speedway's internal policy which requires curbs in front of its doorways to be painted. Ms. Weaver maintains that "internal corporate policies are admissible and relevant to the question of what the standard of care is in a particular case, even though those policies do not necessarily set the standard of care."[11] The Supreme Court of Indiana addressed the use of company policies in *Wal-Mart Stores, Inc.*

---

[11] Appellant's Br. 12.

No. 21-1957                                                              13

*v. Wright*, 774 N.E.2d 891, 894–95 (Ind. 2002). In *Wright*, the defendant challenged a jury instruction that tied Wal-Mart's duty of care to a provision in its operation manual. The instruction stated:

> There was in effect at the time of the Plaintiff's injury a store manual and safety handbook prepared by the Defendant, Wal-Mart Stores, Inc., and issued to Wal-Mart Store, Inc. employees. You may consider the violation of any rules, policies, practices and procedures contained in these manuals and safety handbook along with all of the other evidence and the Court's instructions in deciding whether Wal-Mart was negligent.
>
> The violation of its rules, policies, practices and procedures are a proper item of evidence tending to show the degree of care recognized by Wal-Mart as ordinary care under the conditions specified in its rules, policies, practices and procedures.

*Id.* at 893. The Indiana Supreme Court found these instructions problematic. It explained:

> Initially, we note that implicit in each of these positions, and explicit in the second paragraph of the instruction, is the assumption that the Manual in fact "tend[s] to show the degree of care recognized by Wal-Mart as ordinary care under the conditions specified in [the Manual]." Wal-Mart also objected to this assumption, contending "you can set stand-

> ards for yourself that exceed ordinary care and the fact that you've done that shouldn't be used, as this second paragraph says, as evidence tending to show the degree that you believe is ordinary." We agree. The second paragraph of the instruction told the jurors that because Wal-Mart has established certain rules and policies, those rules and policies are evidence of the degree of care recognized by Wal-Mart as ordinary care. But Wal-Mart is correct that its rules and policies may exceed its view of what is required by ordinary care in a given situation.

*Id*. at 894. Indeed, the court continued, "[t]he law has long recognized that failure to follow a party's precautionary steps or procedures is not necessarily failure to exercise ordinary care." *Id*. The court noted that this rule was "salutary because it encourages following the best practices without necessarily establishing them as a legal norm." *Id*. at 895.

The court also found a second problem with the instruction: The negligence standard is objective, not subjective. *See id*. Just as "[a] defendant's belief that it is acting reasonably is no defense if its conduct falls below reasonable care," so too

> a defendant's belief that it should perform at a higher standard than objective reasonable care is equally irrelevant. As one court succinctly put it, "a party's own rules of conduct are relevant and can be received into evidence with an express caution that they are merely evidentiary and not to serve as a legal standard."

No. 21-1957 15

*Id.* (quoting *Mayo v. Publix Super Mkts., Inc.*, 686 So. 2d 801, 802 (Fla. Dist. Ct. App. 1997)). *Wright* therefore stands for the proposition that, although a policy manual may be admissible, it cannot, without more, set the standard for a landowner's duty of ordinary care.[12]

The centrality of the Speedway policy to Ms. Weaver's case cannot be over-emphasized. Her brief makes clear that her case rises or falls on the existence of this policy: "[W]hile the lower court may believe all curbs are open and obvious conditions, *Speedway believed* there was a significant risk that its invitees would not discover the curb."[13] She then summarizes: "Bottom line: Speedway's knowledge of that risk, the existence of Speedway's painted-curb policy intended to address that risk, and the evidence showing that policy was not

---

[12] Ms. Weaver invites our attention to *Kramer v. Catholic Charities of the Diocese of Fort Wayne-South Bend, Inc.*, 32 N.E.3d 227, 232 n.2 (Ind. 2015), for the proposition that "in some cases an internal company policy could be sufficient to raise a genuine issue of material fact as to duty." *See* Appellant's Br. 12. In that case, the plaintiffs alleged that Catholic Charities' failure to check a putative-father registry prior to the placement of a child for adoption constituted negligence. The sole evidence in support of their claim was "Catholic Charities' informal practice of conducting such pre-placement checks." *Kramer*, 32 N.E.3d at 233. The court rejected this argument on the basis of *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 894–95 (Ind. 2002). *Kramer* merely held open the possibility that there *could be* a case in which an internal company policy "was sufficient to raise a genuine issue of material fact as to duty." *Kramer*, 32 N.E.3d 232 n.2. Thus, nothing in *Kramer* alters the decision of the Supreme Court of Indiana in *Wright* that a company policy is not sufficient to raise a genuine issue of material fact in a premises-liability action.

[13] *See* Appellant's Br. 14.

16                                                                                                         No. 21-1957

followed are sufficient to create a fact question as to whether Speedway breached its duty to Plaintiff."[14]

Ms. Weaver's candid reliance on the Speedway policy as the fulcrum of her case is an accurate portrayal of the record before us. Apart from the manual, Ms. Weaver submits only two other pieces of evidence. The first is the testimony of Speedway's general manager. The manager's testimony, however, concerned the meaning and operation of *the policy*.[15] The second is Ms. Weaver's own statement that she did not see the curb and that she tripped, but negligence cannot be inferred from the mere fact of an accident. *See Brown v. Buchmeier*, 994 N.E.2d 291, 294 (Ind. Ct. App. 2013). In her affidavit, she also opines that, "[m]ore probably true than not, had the curb been painted bright yellow I would [have] notice[d] the height variation and stepped up on the sidewalk."[16] Although Ms. Weaver may testify to matters within her personal knowledge and is entitled to reasonable inferences from that knowledge, speculation as to what might have occurred had the curb been painted is not within her personal knowledge and cannot be used to defeat summary judgment. *Cf. Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intui-

---

[14] *Id.*

[15] *See* R.47-3 at 2 (Miller Dep. 10–12).

[16] R.47-5 ¶ 3.

No. 21-1957                                                                 17

tions, or rumors about matters remote from that experience.'" (quoting *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc))).

In this record, there is no evidence that the area surrounding the curb renders the curb particularly dangerous. There is no evidence that the storeowner should have expected that an invitee would be distracted in her effort to enter the doorway by signs on the storefront, or by activities and items inside the store that can be seen through the glass. Ms. Weaver submits no evidence from which a jury could conclude that the curb from the parking area posed any unusual danger to those (like her) entering the store in the normal course of doing business. Her pictures of the scene do not reveal any distracting posters, lights, features, etc. that may have distracted Ms. Weaver from seeing the step.[17]

## Conclusion

On this record, the district court correctly determined that a rational jury, properly instructed on the law of Indiana, could not have determined that Speedway was liable to Ms. Weaver on account of her fall. Accordingly, the judgment of the district court is affirmed.

                                                                    AFFIRMED

---

[17] This was not the situation in *Walters v. JS Aviation, Inc.*, 81 N.E.3d 1160, 1163–64 (Ind. Ct. App. 2017). In that case, the court noted several aspects of the area surrounding the step that served to mask the step's existence and create a tripping hazard.